UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS, INC.,

Plaintiff,

v.

RALPH W. CUTTER, a single person, and his estate.

Defendant.

CASE NO. C07-0988-JCC

ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 11), Defendant's Response (Dkt. No. 21), and Plaintiff's Reply (Dkt. No. 26), as well as Defendant's Motion for Summary Judgment (Dkt. No. 12), Plaintiff's Response (Dkt. No. 23), and Defendant's Reply (Dkt. No. 25). Having considered the parties' briefing and supporting documentation, and determining oral argument unnecessary, the Court hereby finds and rules as follows.

**I.    BACKGROUND**

Plaintiff is the authorized administrator for, and the assignee of the Washington Teamsters Welfare Trust Fund ("WTWTF") and the Retirees Welfare Trust Fund ("RWTF"). (Pl.'s Mot. 1 (Dkt. No. 11).) Defendant, a former truck driver for Safeway, was a participant in the WTWTF from at least 1994 until he retired in 2001. (*Id.* at 4.) Upon his retirement, Defendant became eligible under the RWTF. (*Id.*) The foregoing trust funds provide medical benefits for its participants, as well as for the eligible

ORDER – 1

dependents of participants, including spouses. (*Id*. at 1.)

On several occasions, Defendant informed Plaintiff that he was married to Rosalie Devereaux. For example, on a 1994 WTWTF Participant Data Form, Ms. Devereaux is listed as Defendant's "spouse" in a section of the form marked "Eligible Dependent Data." (Brown Decl. (Dkt. No. 15-2).) Similarly, Defendant's 1995 WTWTF Participant Data Forms both indicate that he is married. (Brown Decl. (Dkt. Nos. 15-3 & 15-4).) Upon his retirement, Defendant submitted an Application for Coverage under the RWTF that indicates Ms. Devereaux as his spouse and specifically elects spouse coverage. (Brown Decl. (Dkt. No. 15-5).) Finally, Plaintiff received an electronic funds transfer authorization from Defendant, under the RWTF, which is signed by Ms. Devereaux as "spouse." (Brown Decl. (Dkt. No. 15-6).) On the basis of these representations, Plaintiff paid for Ms. Devereaux's medical treatment until her death from cancer in 2004. During the time Ms. Devereaux was receiving treatment, Defendant was mailed explanation of benefits forms indicating that Ms. Devereaux was receiving medical coverage under Defendant's insurance. (*See*, *e.g.*, Brown Decl. (Dkt. No. 15-10).)

Upon Ms. Devereaux's passing, Defendant asserted a claim against her estate, seeking the return of his personal property and half of the community property under Washington law. (Def.'s Mot. 4 (Dkt. No. 12).) With its "Findings of Fact and Conclusions of Law," the Snohomish County Superior Court denied Defendant's claim after determining that Defendant and Rosalie Devereaux were never legally married, nor did they have a "meretricious relationship" under Washington law. (Leahy Decl. (Dkt. No. 18-2 at 9–10).) With regard to legal marriage, the court noted that Defendant and Ms. Devereaux participated in a "ceremony" of some kind, for which they had an unsigned certificate as a memento, however there was insufficient evidence of a legal marriage under Washington law. The court specifically noted that there was no evidence that either of them believed the person conducting the ceremony had legal authority to preside over a marriage. (*Id*. at 4.) As for whether a meretricious relationship was forged, the court relied on the fact that two days after the ceremony described above, Defendant filled out

ORDER – 2

an application with the Washington State Department of Corrections that stated he was single and lived with a friend. Furthermore, both Defendant and Ms. Devereaux filed their federal tax returns as single persons in the years following the ceremony; and in her will, Ms. Devereaux stated that she was never legally married to Defendant. (*Id*. at 4–5.) Defendant filed a motion for a new trial, or in the alternative reconsideration (Leahy Decl. (Dkt. No. 18-3)), which was denied. (*Id*. (Dkt. No. 18-4).) On appeal, Defendant did not argue that he and Ms. Devereaux were ever legally married, but rather that they had a meretricious relationship. (*Id*. (Dkt. No. 18-5).) The appellate court rejected this contention and upheld the trial court's ruling. (*Id*.)

Plaintiff filed this action to recover over $70,000 in medical benefits paid for Ms. Devereaux's treatment. Plaintiff claims it is entitled to such recovery based on: (1) equitable restitution under the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) fraud under Washington law; (3) fraudulent misrepresentation under Washington law; and (4) negligent misrepresentation under Washington law. (Compl. ¶¶ 16–64 (Dkt. No. 1).)

## II.     DISCUSSION

### A.     Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). There is no genuine issue for trial unless there is sufficient evidence to support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 250. The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id*. at 257. Furthermore, the Court must draw all reasonable inferences in favor of the nonmoving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).

ORDER – 3

In addition to demonstrating that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.     Defendant's Marital Status**

While many of the arguments that Defendant makes in his briefing render his marital status irrelevant to the issues on summary judgment, (Def.'s Mot. 6–11 (Dkt. No. 12)), he also suggests that this Court should revisit the state court determination on this question. (*See id*. at 11–12.) On this latter point, the Court declines. The question of whether Defendant and Ms. Devereaux were legally married was the central issue in the litigation over Ms. Devereaux's estate. A Washington state court made a final determination on an issue that is entirely within the purview of state law, and after his motion for a new trial or reconsideration was denied, Defendant chose not to challenge the ruling on appeal. There is absolutely no basis for this Court to now call that determination into question.

Defendant argues that even if this Court were not inclined to revisit the Washington state court decision, that decision cannot be applied in this case under the theory of collateral estoppel because the issues are not identical, and applying the doctrine of collateral estoppel would work an injustice in this case. (Def.'s Resp. 3–6 (Dkt. No. 21).) Federal law "generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). In order to decide whether such preclusive effect is warranted, federal courts apply the doctrine of collateral estoppel under the law of the state in which the action originated. *See*, *e.g.*, *Haring*, 462 U.S. at 314–315 (applying Virginia law).

In Washinton, "[t]he doctrine of collateral estoppel prevents a party from relitigating issues that

ORDER – 4

have been raised and litigated by the party in a prior proceeding." *Clark v. Baines*, 84 P.3d 245, 249 (Wash. 2004). Washington courts have fashioned a four-part test to decide whether collateral estoppel should apply in a given case. Under this analysis:

> The party asserting collateral estoppel must prove: (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.

(*Id.*) Failure to satisfy any one of these criterion renders the doctrine inapplicable. (*Id.*)

Defendant's reliance on the first and fourth factors of this test is unavailing. With regard to the first, Defendant argues that the issue in the probate claim was whether he and Ms. Devereaux were ever married, whereas the issue here is whether defendant misrepresented his marital status. (Def.'s Resp. 3 (Dkt. No. 21).) This is pure sophistry. While the two *cases* are surely different, the question of whether Defendant was legally married to Ms. Devereaux under Washington law was a crucial issue for his estate claim, and it is a crucial issue as to the viability of Plaintiff's claims in this forum. This fact also demonstrates why Defendant's claim of "injustice" under the fourth factor must fail. Because Defendant's marital status was crucial to his claim on Ms. Devereaux's estate, he cannot argue that his did not have a "full and fair opportunity to litigate" the question. Every incentive and opportunity to persuade the state court was present at that time, and therefore Defendant is collaterally estopped from challenging whether he and Ms. Devereaux were married as that term is defined under Washington law. Thus, for the purpose of the present motions, Defendant and Ms. Devereaux were never married under Washington law.

### C. "Equitable" Remedies Under ERISA

The arguments as to his marital status notwithstanding, Defendant also maintains that federal law does not offer the type of remedy Plaintiff seeks here. ERISA Section 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision

ORDER – 5

of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Defendant argues, on the strength of two recent Supreme Court cases, that the recovery of medical benefits improperly paid on Ms. Devereaux's behalf is not an "equitable" remedy under the statute, and therefore not cognizable by this Court.

In *Great-West Life & Annuity Insurance Comp. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court squarely addressed the scope of relief afforded under ERISA § 502(a)(3). That case dealt with a circumstance frequently the subject of dispute under this provision of ERISA, though not presented here, in which a plan beneficiary who has received benefits paid by the plan, has a contractual obligation to reimburse the plan out of the beneficiary's recovery from a third party. The question presented in *Knudson*, as in many cases under § 502(a)(3), was whether a plan's attempt to enforce this reimbursement provision was "equitable relief" under the statute. Citing an earlier case on the subject, the Court first explained that "equitable relief" under § 502(a)(3) "must refer to 'those categories of relief that were *typically* available in equity . . .'" *Knudson*, 534 U.S. at 210 (emphasis in original) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)). In response to the petitioners' claim that their suit was for the traditional equitable remedy of restitution, the Court surveyed the law "in the days of the divided bench" and concluded that "not all relief falling under the rubric of restitution is available in equity." *Knudson*, 534 U.S. at 212. Rather, actions seeking to impose personal liability on a defendant for a benefit conferred were for a remedy "at law," while actions seeking "to restore to the plaintiff particular funds or property in the defendant's possession," ordinarily as a constructive trust or equitable lien, were considered "in equity." (*Id*. at 213–214.) Applying this framework to the case, the Court concluded that "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred." (*Id*. at 214 (emphasis in original)).

ORDER – 6

While this approach may have had the effect of narrowing the scope of relief granted by courts under § 502(a)(3), the subsequent decision in *Sereboff v. Mid Atlantic Medical Services, Inc.* 126 S.Ct. 1869 (2006) made it clear that such relief was not reduced to a nullity. *Sereboff* also involved a contractual reimbursement provision, however the Court distinguished the two cases based on the location of the funds. Whereas in *Knudson* the plaintiff sought to impose personal liability for funds that had been set aside by law and out of the defendant's possession, *Sereboff* involved particular funds within the defendants' personal investment accounts that were owed to the plaintiff by contract. *Sereboff*, 126 S. Ct. at 1874. Summing up the holding in *Knudson*, the Court in *Sereboff* emphasized that *Knudson* did not purport to "catalog all the circumstances in which equitable liens were available in equity," but simply found that "equitable restitution was unavailable because the funds sought were not in Knudson's possession." *Sereboff*, 126 S. Ct. at 1876.

Since *Knudson*, courts in the Ninth Circuit has applied this approach to other reimbursement cases, *see*, *e.g.*, *Carpenters Health and Welfare Trust for Southern California v. Vonderharr*, 384 F.3d 667 (9th Cir. 2004), as well as to similar fact scenarios. *See*, *e.g.*, *Honolulu Joint Apprenticeship and Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234 (9th Cir. 2003) (suit to recover training costs for an employee who breached contractual provision by working for nonunion employer not one for "equitable relief"). These cases share the common feature, also true in *Knudson* and *Sereboff*, of a plaintiff seeking monetary damages as a result of a contractual breach, to compensate for a benefit conferred.

What this considerable body of law does not squarely address is how the courts of equity would have treated present case, in which Plaintiff asserts that Defendant improperly procured medical benefits for a person not covered under the plan. Defendant's position is that this too is legal rather than equitable relief, citing *Knudson* and *Sereboff*, and pointing to the fact that the money was not paid to him personally, but rather to Ms. Devereaux's medical providers. However, in cases both before and after

ORDER – 7

*Knudson*, the Ninth Circuit has recognized the remedy of restitution under ERISA § 502(a)(3) in situations involving "ill-gotten gains," such as "money obtained through fraud or wrongdoing." *Cement Masons Health and Welfare Trust Fund for Northern Cali. v. Stone*, 197 F.3d 1003, 1006–07 (9th Cir. 1999); *see also Vonderharr*, 384 F.3d at 671; *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000). These cases all trace this interpretation to an earlier Supreme Court case, *Mertens v. Hewitt Associates*, in which the Court, interpreting the same language of "equitable relief" in § 502(a)(5), stated that it "includes restitution of ill-gotten plan assets or profits . . ." 508 U.S. 248, 260 (1993). Indeed commentators on the subject appear to share the view that the equitable remedy of restitution is available under these circumstances:

> In many cases, the distinction [between legal and equitable relief under § 502(a)(3)] is an easy one to draw. For example, in *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487 (D.C. Cir. 1988), the court upheld restitution to a disability insurer of excess disability payments made to the insured after the insured was no longer qualified for benefits. Such a case presents no difficulty following [*Knudson*], because the remedy is clearly restoring to the plan funds wrongfully transferred from the plan to the insured.

JAYNE E. ZANGLEIN & SUSAN J. STABILE, ERISA LITIGATION 239 n.113 (2d ed. 2005). In this Circuit, this rationale has also been found to extend to benefits improperly procured by an employer on behalf of an ineligible employee, where the action by the fund was against the employer. *Northern California Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian-American Pastry Co., Inc.*, 645 F. Supp. 160 (N.D. Cal. 1986).[1]

The Court concludes that Plaintiff seeks "equitable relief" as that phrase is defined in 29 U.S.C. §

---

[1] Defendant draws the Court's attention to another case from the Northern District of California that appears to reach the opposite conclusion. *See Trustees on Behalf of the Teamsters Benefit Trust v. Doctors Medical Center of Modesto, Inc.*, 286 F. Supp. 2d 1234 (N.D. Cal. 2003). The theory of recovery in this case however, was not that the defendant had improperly procured benefits by fraud or misrepresentation, but rather that overpayment was the result of a dispute over contract interpretation as to coverage. (*Id.* at 1238.) This appears to distinguish this case from the line of decisions in this Circuit regarding "ill-gotten gains." It is also worth noting that the defendant in that case conceded that the plaintiff had a potential remedy at law in state court, a position that Defendant here has expressly denied.

ORDER – 8

1132(a)(3) [ERISA § 502(a)(3)]. This case is fundamentally distinguishable from the line of reimbursement cases discussed above for two reasons. First, Plaintiff is not trying to enforce a separate contractual obligation to compensate for a benefit conferred; rather, it seeks to recoup the *actual* benefit conferred. Second, Plaintiff alleges fraud and/or wrongdoing by the Defendant in procuring medical benefits, which the Supreme Court in *Mertens* and the Ninth Circuit in *Stone*, *Vonderharr*, and *Ellis* have explicitly recognized as giving rise to equitable relief under ERISA. Defendant's attempt to avoid this conclusion by asserting that he never retained the funds in question results from a coarse reading of *Knudson* and *Sereboff* that would truly elevate form over substance. As a plan participant, Defendant was the necessary conduit through which Plaintiff's obligation to provide benefits flowed. If he used his position to procure these benefits for Ms. Devereaux, it would surely be an impoverished view of ERISA to find this alone to be the dispositive factor as to whether Congress intended to provide relief under the statute. That the funds were spent on Defendant's behalf only means that funds actually in his possession were spared from expense. Furthermore, the Supreme Court's decisions in *Knudson* and *Sereboff* do not counsel to the contrary. Defendant appears to have latched onto language about the funds being in the defendants' possession, a crucial factor in those cases, without acknowledging that those funds were entirely separate assets from the original benefit conferred by the plaintiffs. In the present case, Plaintiff's theory is that Defendant, through fraud or misrepresentation, appropriated money he was never entitled to; this is unjust enrichment with a remedy in equity.

Since Plaintiff seeks a form of relief cognizable under ERISA § 502(a)(3), the next question is whether it can prevail on summary judgment. Defendant argues that the terms of the plans are ambiguous as to whether a legal marriage is necessary in order to claim a spouse as a dependent. (Def.'s Mot. 9–11 (Dkt. No. 12).) The implication is not only that Defendant did not misrepresent his status, but also that the benefits were not improperly paid. Such ambiguity arises, according to Defendant, because the "ordinary meaning" of the terms "married" and "spouse" encompass the kind of "religious" ceremony in

ORDER – 9

which he and Ms. Devereaux participated. This is not a question on which reasonable minds could differ. The fact that the plan fails to explicitly limit coverage to "legal" spouses, rather than creating ambiguity, suggests the opposite conclusion: that no such qualification is necessary for an institution that, at least in the public sphere, is inherently the product of state law. While religious traditions may have varying practices regarding marriage, the questions in this case concern the uniquely *legal* consequences of marriage. Quite tellingly, Defendant has not offered a single distinction of legal consequence that depends on any definition of marriage other than the legal one. Furthermore, Defendant's background does not suggest that he could have been caught unaware by this distinction. As the trial court found, he filed all his tax returns during the relevant time as a single person. Furthermore, in his testimony at trial, Defendant explained that at one time he asked Ms. Devereaux to sign a prenuptial agreement because he "was kind of leery of a legal marriage." (Leahy Decl. (Dkt. No. 18-8 at 12).) This reticence may have been due to the three marriages prior to his relationship with Ms. Devereaux, something else he admitted at trial. (*Id*. at 38.) Under these circumstances, the Court is not convinced that the benefit plan was ambiguous as the meaning of "spouse," nor that Defendant was actually confused as to whether Ms. Devereaux was eligible under the plan. Without commenting on Defendant and Ms. Devereaux's relationship as interpreted by them, it is enough to say that it was not the kind that could invoke Plaintiff's obligations under the benefit plans.

### D. ERISA Preemption and Plaintiff's State Law Claims

In addition to his ERISA claim, Plaintiff also brings fraud, fraudulent misrepresentation, and negligent misrepresentation claims under Washington law. (Compl. ¶¶ 30–64 (Dkt. No. 1).) Defendant argues that they are all preempted by ERISA, citing a Sixth Circuit case with a largely analogous fact pattern for support. (Def.'s Resp. 8 (Dkt. No. 21) (citing *Kentucky Laborers Dist. Council Health and Welfare Fund v. Hope*, 861 F.2d 1003 (6th Circ. 1988)).) Plaintiff responds by arguing that its state law claims require only a "cursory look" at the plan documents, and therefore are not preempted. (Pl.'s Resp.

ORDER – 10

4–5 (Dkt. No. 23) (citing *Prakash v. Pulsent Corp. Employee Long Term Disability Plan*, Slip Copy, 2007 WL 1864464 (N.D. Cal. 2007)).)

ERISA's preemption clause provides as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . .

29 U.S.C. § 1144 [ERISA 514(a)]. The Supreme Court has repeatedly observed "that the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1986) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Consistent with its broad scope, ERISA's preemption clause "is not limited to state laws 'specifically designed to affect employee benefit plans.'" JORDAN, PFLEPSEN, JR., & GOLDBERG, HANDBOOK ON ERISA LITIGATION § 3.03[A] (3d ed. 2008 Supp.) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98 (1983)). Rather, as *Pilot Life* demonstrated, even common law tort and contract actions can be preempted if they "relate to" an employee benefit plan. *Pilot Life Ins. Co.*, 481 U.S. at 48. A number of cases in this Circuit have reached the same conclusion under similar circumstances. *See Olson v. General Dynamics Corp.*, 960 F.2d 1418 (9th Cir. 1991) (claim that level of retirement benefits was misrepresented is preempted); *Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund*, 859 F.2d 514 (9th Cir. 1988) (claims of bad faith, fraud, deceit, and breach of fiduciary duty in the administration of an employee benefit plan are preempted); *Johnson v. District 2 Marine Engineers Beneficial Ass'n-Associated Maritime Officers, Medical Plan*, 857 F.2d 514 (9th Cir. 1988) (claims of fraud and intentional infliction of emotional distress in denial of medical benefits are preempted).

Consistent with the foregoing authority, the Court finds that Plaintiff's state law claims are preempted by ERISA. While fraud, fraudulent misrepresentation, and negligent misrepresentation are

ORDER – 11

garden variety common law claims, in the particular context of this case they would directly govern the relationship between the administrator of an ERISA plan and a plan participant. Furthermore, they would purport to decide the respective obligations of the parties and level of benefits owed under an ERISA plan. Admittedly, a determination about whether Defendant misrepresented his relationship with Ms. Devereaux is not an analysis likely to seriously disrupt the federal regulatory regime under ERISA; this might be what Plaintiff means by arguing that its state law claims would require only a "cursory look" at the benefit plans in question. (Pl.'s Resp. 4 (Dkt. No. 23).) While perhaps a comment on the complexity of the issues raised, the need to interpret the plan only confirms that these state law claims fall squarely within the ambit of the ERISA preemption clause. As such, they are preempted.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 11) and Defendant's Motion for Summary Judgment (Dkt. No. 12) are both GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff is granted summary judgment on its claim for equitable restitution under ERISA § 502(a)(3), however its state law claims are preempted under ERISA § 514(a). Each party shall pay its own attorneys' fees and costs. Accordingly, Plaintiff is awarded judgment in the amount of $70,838.95, plus interest.

SO ORDERED this 24th day of January, 2008.

/s/ John C. Coughenour

John C. Coughenour
United States District Judge

ORDER – 12